UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HEATHER E. CORTES,                          Case No. 15-14064

                    Plaintiff,              George Caram Steeh
v.                                          United States District Judge

COMMISSIONER OF SOCIAL SECURITY,            Stephanie Dawkins Davis
                                            United States Magistrate Judge

                    Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 17, 19)**

## I.   PROCEDURAL HISTORY

A.     Proceedings in this Court

On November 19, 2015, plaintiff filed the instant suit seeking judicial review of the Commissioner's decision disallowing social security disability benefits.  (Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge George Caram Steeh referred this matter to Magistrate Judge Michael Hluchaniuk for the purpose of reviewing the Commissioner's decision denying plaintiff's claims.  (Dkt. 5).  On January 5, 2016, this matter was reassigned to the undersigned.  (*See* Text-Only Notice of Reassignment dated 1/5/16).  This matter is before the Court on cross-motions for summary judgment. (Dkt. 17, 19).  Plaintiff also filed a reply in support of her motion for summary

judgment.  (Dkt. 21).  The cross-motions are now ready for report and
recommendation.

### B.    Administrative Proceedings

On June 21, 2012 plaintiff filed claims for period of disability, disability
insurance benefits, and supplemental security income alleging disability beginning
June 1, 2011.  (Dkt. 13-2, Pg ID 68).  The Commissioner initially denied
plaintiff's disability application on September 6, 2012.  *Id*.  Thereafter, plaintiff
requested an administrative hearing, and on April 16, 2014, she appeared with
counsel before Administrative Law Judge ("ALJ") Earl Ashford, who considered
his case *de novo*.  (Dkt. 13-2, Pg ID 86-114).  In an April 25, 2014 decision, the
ALJ determined that plaintiff was not disabled within the meaning of the Social
Security Act.  *Id*. at Pg ID 65-81.  The ALJ's decision became the final decision of
the Commissioner on September 17, 2015, when the Social Security
Administration's Appeals Council denied plaintiff's request for review.  *Id*. at Pg
ID 49-54.

For the reasons set forth below, the undersigned **RECOMMENDS** that
plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion
for summary judgment be **DENIED**, that the findings of the Commissioner be
**REVERSED** and that this matter be **REMANDED** for further proceedings under
Sentence Four.

## II.   FACTUAL BACKGROUND

### A.   ALJ's Findings

On the alleged onset date of disability, plaintiff was 33 years old, which falls into the category of "a younger individual."  (Dkt. 13-2, Pg ID 79).  Plaintiff, a resident of Carlton, Michigan, has past relevant work as a customer service representative, front desk clerk, and data entry/routing clerk.  *Id*. at Pg ID 79, 90. Plaintiff suffers from a back condition, depression, anxiety, and chronic obstructive pulmonary disease.  *Id*. at Pg ID 70.  Plaintiff stopped working because of her health conditions.  *Id*. at Pg ID 95.

The ALJ applied the five-step disability analysis to plaintiff's claims and found at step one that plaintiff did not engage in any substantial gainful activity since the alleged onset date. (Dkt. 13-2, Pg ID 70).  At step two, the ALJ found that plaintiff had the following severe impairments:

> [D]egenerative disc disease with low back pain and lumbar neuralgia; dextroscoliosis; obesity; major depressive disorder (variously diagnosed as bipolar disorder); anxiety (variously diagnosed as panic disorder with agoraphobia and posttraumatic stress disorder); chronic obstructive pulmonary disease (variously diagnosed as emphysema, asthma, chronic bronchitis); and pulmonary fibrosis status post acute respiratory distress syndrome ... .

*Id*.  At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled one of the listings in the

regulations. *Id*. at Pg ID 71.  The ALJ determined that plaintiff has the following

residual functional capacity:

> After careful consideration of the entire record, the
> undersigned finds that the claimant has the residual
> functional capacity to perform light work as defined in
> 20 CFR 404.1567(b) and 416.967(b) except: Allowed to
> sit or stand alternatively, at will, provided that she is not
> off task for more than 8% of the work period. Postural
> limitation of no climbing of ladders, ropes, or scaffolds.
> Occasional climbing of ramps and stairs. Occasional
> balancing, stooping, kneeling, crouching and crawling.
> Frequent use of the bilateral lower extremities for
> operation of foot controls. Manipulative limitation of
> frequent use of the bilateral upper extremities for
> reaching, handling, and fingering. Environmental
> limitation to avoid concentrated exposure to hazards,
> such as moving machinery, unprotected heights, irritants
> such as fumes, odors, dust, and gases, extreme cold,
> extreme heat, humidity, wetness, commercial driving and
> vibrations. Work limited to simple, routine, and
> repetitive tasks in a work environment free from fast
> paced production requirements, such as moving
> assembly lines and conveyor belts, involving only work
> related decisions, with few if any workplace changes.
> Occasional interaction with the general public,
> coworkers, and supervisors.

*Id*. at Pg ID 73.  At step four, the ALJ determined that plaintiff could not perform

any past relevant work.  *Id*. at Pg ID 79.  At step five, the ALJ found that, given

plaintiff's age, education, work experience and RFC, there are sufficient jobs that

exist in the national economy that plaintiff can perform.  *Id*. at Pg ID 79-80.  Thus,

the ALJ concluded that plaintiff has not been under a disability from the alleged

onset date through the date of the ALJ's decision. *Id*. at Pg ID 80.

B.   Plaintiff's Claims of Error

In plaintiff's initial denial, her case was reviewed by a State agency doctor; a pediatrician. (Dkt. 13-3, Pg ID 145). However, no mental health provider reviewed the file at this level of review or any other level of review. Plaintiff contends that the lack of any medical opinion at step three equivalency is an error warranting remand. *Stratton v. Astrue*, 987 F.Supp.2d 135, 2012 WL 1852084, *13 (D. N.H. 2012); *Retka v. Comm'r of Soc. Sec.*, 1995 WL 697215, at *2 (6th Cir. Nov. 22, 1995) (generally, the opinion of a medical expert is required before a determination of medical equivalence is made.). Plaintiff's record reflects that plaintiff was not sleeping well with excessive fatigue complaints/insomnia; (Dkt. 13-7, Pg ID 434-437, 443-447, 491, 494-501, 550-551); she had a fear of leaving her home/panic attacks (Dkt. 13-7, Pg ID 443-447, 494-501, 547-548); her medications were increased/changed (Dkt. 13-7, Pg ID 434-437, 470-491, 547-548); she reported difficulty concentrating (Dkt. 13-7, Pg ID 443-447). Dr. Sharon found that she could not perform even low stress work and would be off task for more than 25% of the workday (Dkt. 13-7, Pg ID 530-533); and Dr. Jain likewise found she would be off task 25% of the workday or more (Dkt. 13-7, Pg ID 536-539) and most recently she still experienced anxiety that disabled her from normal interactions and being outside her home. (Dkt. 13-7, Pg ID 546-547).

5

According to plaintiff, these records certainly raise the question of whether Listing 12.04/12.06 was equaled, and the ALJ's lay assessment of the medical evidence should not suffice.

Similarly, plaintiff argues that the ALJ failed to rely on any consulting or treating physician as to plaintiff's mental impairments in formulating the RFC. Instead, according to plaintiff, the ALJ interpreted raw medical data without the benefit of an expert medical opinion, violating the established principle that, in weighing the medical evidence, "'ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.'" *Simpson v. Comm'r of Soc. Sec.*, 344 Fed.Appx. 181, 194 (6th Cir. 2009) (quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996.  The ALJ offers his own lay rationale asserting that plaintiff's mental health record shows improvement.  (Dkt. 13-2, Pg ID 77).  According to plaintiff, this simply ignores that on occasion, plaintiff's medications warranted change or increasing the dosage.  (Dkt. 13-7, Pg ID 434-437, 470-491, 547-548).  While one treatment note reflects that she was "doing well" (Dkt. 13-7, Pg ID 542), the most recent notes reflect that she was experiencing anxiety that disabled her from normal interactions and being outside her home.  (Dkt. 13-7, Pg ID 546-547).  And, while the ALJ relies on a GAF of 50 and 60, reflective of serious to moderate mental impairments, to conclude she can work (Dkt. 13-2, Pg ID 78-79), plaintiff points out that the Commissioner of

6

Social Security has specifically declined to endorse the GAF scale for use in the disability programs, and has stated that the GAF scale "does not have a direct correlation to the severity requirements in our mental disorders listings." Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50, 746-50, 764-65 (August 21, 2000).

Next, plaintiff contends that the ALJ inappropriately affords little weight to the opinion of Dr. Sharon on the basis that she had only treated plaintiff twice. (Dkt. 13-2, Pg ID 78). Plaintiff says this is not a reason on its own for rejecting the opinion, particularly since she is the only medical source to have offered an opinion on plaintiff's mental limitations. The only other rationale offered by the ALJ is that at the time of treatment, plaintiff reported she was currently "stable." (Dkt. 13-2, Pg ID 78). Consequently, plaintiff argues that the ALJ has failed to offer good reasons for affording Dr. Sharon little weight. The Sixth Circuit "[does] not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion." *Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011) (quoting *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009)).

As to plaintiff's physical RFC, plaintiff asserts that the ALJ erred by giving

little weight to Dr. Jain's opinions. Plaintiff points out that Dr. Jain is the only

doctor in the file to have evaluated her pulmonary issues, and he is a specialist in

her condition. 20 C.F.R. §404.1527(c)(5). The consultative examiner does not

mention any pulmonary issues (Dkt. 13-7, Pg ID 344) and the State agency

pediatrician did not review the pulmonary records. (Dkt. 13-3, Pg ID 140-141).

Thus, according to plaintiff, the ALJ has again rejected opinion evidence and

relied on his own expertise to draw RFC conclusions from raw medical data. The

ALJ affords Dr. Jain limited weight because plaintiff continues to smoke. (Dkt.

13-2, Pg ID 77-78). In arriving at this rationale, plaintiff says the ALJ does not

point to any recommendation that plaintiff failed to heed about smoking cessation.

SSR 82-59. Moreover, the ALJ has not suggested smoking cessation, will return

plaintiff's pulmonary issues to pre-disability status. SSR 82-59; *see e.g.*, *Rousey*

*v. Heckler*, 771 F.2d 1065, 1069 (7th Cir. 1985) ("Essential to a denial of benefits

pursuant to Section 404.1530 is a finding that if the claimant followed her

prescribed treatment she could return to work."). While plaintiff had not been

hospitalized since April 2013, more recent records did reflect shortness of breath

complaints (Dkt. 13-7, Pg ID 506) and she had interstitial lung disease, worsening

on the CT scan (Dkt. 13-7, Pg ID 507) which is consistent with Dr. Jain's report.

(Dkt. 13-7, Pg ID 536). Thus, plaintiff maintains that the ALJ has failed to offer

good reasons for the weight afforded to Dr. Jain. *Cole*, 661 F.3d at 939.

Significantly, the ALJ gives the State agency pediatrician opinion great weight suggesting it is consistent with the file as a whole. (Dkt. 13-2, Pg ID 78). Yet, the ALJ does not address that the opinion only considered Exhibit 1 (Dkt. 13-3, Pg ID 134) in formulating his opinions; in other words, over 200 pages of medical records were not reviewed by the doctor including any pulmonary issues, ongoing back treatment and the assessments by both treatment opinions. (Dkt. 13-7, Pg ID 356-565).

Plaintiff next takes issue with the ALJ's provision of a sit/stand option so long as plaintiff is not "off task" for more than 8% of the workday. (Dkt. 13-2, Pg ID 73). According to plaintiff, the ALJ has not explained where he derives this restriction. Plaintiff suggests that it seems motivated by the testimony of the VE as the VE stated anything in excess of 8% would preclude work. (Dkt. 13-2, Pg ID 111-112); *see e.g.*, *Rapp v. Colvin*, 2015 U.S. Dist. LEXIS 34106, *17 (W.D. Wis. Mar. 18, 2015) ("given the ALJ's silence and the minimal record, it cannot be said that [Plaintiff] was any more or less likely to be off-task 10% of the day than being off-task for 50% of the day"). Plaintiff asserts that the ALJ has failed to build an accurate and logical bridge between evidence and result, remand is warranted. *See Morrison v. Comm'r of Soc. Sec.*, 2015 U.S. Dist. LEXIS 32793, *41-42 (E.D. Mich. Feb. 13, 2015) (failed to articulate with specificity reasons for the findings and conclusions he makes and failed to build an accurate and logical

bridge between the evidence and his conclusion).

Finally, plaintiff finds faults with several aspects of the ALJ's credibility analysis. The ALJ reduces plaintiff's credibility based on the fact that she had filed for unemployment and also filed for DIB and SSI. Plaintiff points out that 20 C.F.R. § 416.210 directs SSI applicants to apply for "other benefits" for which they qualify — including unemployment benefits — and instructs SSI applicants that "you are not eligible for SSI benefits if you do not apply for all other benefits for which you may be eligible." 20 C.F.R. § 416.210(a) and (b). Plaintiff acknowledges that the ALJ is certainly entitled to take plaintiff's unemployment benefits application into consideration in his credibility analysis, but he should nonetheless consider plaintiff's situation in its entirety before concluding that an unemployment application renders the claimant incredible. The ALJ next holds against plaintiff that she is in school, yet there was no testimony elicited at the hearing and the one reference to her being "in school" offers no hint at what this reference means. (Dkt. 13-7, Pg ID 479). According to plaintiff, the ALJ failed to examine this reference properly by conscientious probing of all relevant facts. *See also Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 396 (6th Cir. 2010) ("the ALJ has an inquisitorial duty to seek clarification on material facts."). Finally, plaintiff disputes the ALJ's suggestion that smoking is simply a "lifestyle" decision without considering the highly addictive nature of the product which

likely impacts her ability to cease smoking.  *See e.g.*, *Nichols v. Colvin*, 2013 U.S. Dist. LEXIS 150731, *41 (W.D. Wis. Oct. 21, 2013).

C.    Commissioner's Motion for Summary Judgment

The Commissioner maintains that any step three error was harmless, and points out that it is plaintiff's burden to show that her impairments meet or equal a listing.  *Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).  To establish equivalency, she "must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment."  *Zebley*, 493 U.S. at 531 (emphasis in original); *see also Lusk v. Comm'r of Soc. Sec.*, 106 Fed. Appx. 405, 411 (6th Cir. 2004) (plaintiff must "present medical evidence that describes how his impairment is equivalent to a listed impairment").  To meet or equal listing 12.04 or 12.06, the claimant must show both (A) certain symptoms specific to the listed mental impairment (the "paragraph A" criteria; and (B) marked restrictions in two out of three areas of functioning (i.e., activities of daily living; social functioning; and concentration, persistence, and pace), or marked restrictions in one area, plus repeated episodes of decompensation of extended duration (the "paragraph B" criteria).  20 C.F.R. Pt. 404, Subpt. P, Appx 1, §§ 12.04, 12.06.  In the alternative, the claimant must show (C) a medically documented history of an impairment of at least 2 years' duration, with one of the following (the "paragraph C" criteria).  Regardless of

11

whether plaintiff's impairments meet or equal the paragraph A criteria, the

Commissioner contends that the ALJ supportably found that they did not meet or

equal the paragraphs B or C criteria.  Further, plaintiff does not challenge any of

the specific conclusions underlying the ALJ's step-three determination.  Rather,

her sole challenge to this conclusion implicates Social Security Ruling 96-6p,

which explains:

> The [ALJ] or Appeals Council is responsible for
> deciding the ultimate legal question of whether a listing
> is met or equaled. . . . However, longstanding policy
> requires that the judgment of a physician (or
> psychologist) designated by the Commissioner on the
> issue of equivalence before the [ALJ] or the Appeals
> Council must be received into the record as expert
> opinion evidence and given appropriate weight.

SSR 96-6p, 1996 WL 374180, at *3 (July 2, 1996).  The Commissioner

acknowledges that the record does not include any state agency medical opinion

assessing her mental impairments (Pl. Br. 13, 15), but asserts that this omission

does not warrant remand in this case.  The Commissioner's policy of requiring

ALJs to obtain a medical opinion on equivalence did not relieve plaintiff of her

own burden to present evidence of equivalence – which she failed to meet.  *See*

*Lusk*, 106 Fed. Appx. at 411; *see also Bondy v. Comm'r of Soc. Sec.*, 2015 WL

1530435, at *20 (E.D. Mich. Mar. 31, 2015); *Buchanon v. Comm'r of Soc. Sec.*,

2015 WL 927831, at *6-7 (E.D. Mich. Mar. 4, 2015).

Although courts in this district generally remand when the record contains "no equivalence opinion whatsoever," they also acknowledge that "the lack of a medical opinion on equivalence can be deemed harmless error in some cases." *Bukowski v. Comm'r of Soc. Sec.*, 2014 WL 4823861, at *6 (E.D. Mich. Sept. 26, 2014); *see also Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 655-58 (6th Cir. 2009) (applying harmless-error analysis in context of ALJ's step-three findings). For example, the error may be harmless where,"the evidence does not demonstrate the possibility that [the plaintiff] could meet the criteria of a listed impairment." *Leveque v. Colvin*, 2015 WL 4601156, at *6 (E.D. Mich. July 31, 2015), adopted by 2015 WL 5612016 (Sept. 23, 2015). According to the Commissioner, plaintiff has not pointed to sufficient evidence to plausibly support an equivalence finding. To demonstrate that an error is prejudicial, plaintiff must do more than simply declare that a positive finding is possible; she must make some showing to that effect. *See Shinseki v. Sanders*, 556 U.S. 396, 410 (2009) ("[I]t normally makes sense to ask the party seeking reversal to provide an explanation, say, by marshaling the facts and evidence showing the contrary."); *Lusk*, 106 Fed. Appx. at 411 (requiring plaintiff to "describe how" his impairment equals a listing). Moreover, the Commissioner asserts that plaintiff has not explained how any of the cited evidence demonstrates marked limitations in any of the paragraph B criteria or corresponds to any of the paragraph C criteria. *Cf. Smith-Johnson v.*

13

*Comm'r of Soc. Sec.*, 579 Fed. Appx. 426, 432 (6th Cir. 2014) ("A claimant must do more than point to evidence on which the ALJ could have based his finding to raise a 'substantial question' as to whether he has satisfied a listing. Rather, the claimant must point to specific evidence that demonstrates he reasonably could meet or equal every requirement of the listing.").

According to the Commissioner, plaintiff also fails to demonstrate any reversible error in the ALJ's RFC assessment.  Her primary challenge is that this assessment is not based on any medical opinion; she asserts that the ALJ thereby "play[ed] doctor" and "interpreted raw medical data." (Pl. Br. 16).  The Commissioner counters that the ALJ's physical RFC assessment is based largely on two medical opinions.  (Dkt. 13-2, Pg ID 73, 78-79).  Moreover, as the Sixth Circuit has recognized, the ALJ is not required to base his RFC findings on a medical opinion.  *Coldiron v. Comm'r of Soc. Sec.*, 391 Fed. Appx. 435, 439 (6th Cir. 2010) ("An ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering an RFC finding."); *Poe v. Comm'r of Soc. Sec.*, 342 Fed. Appx. 149, 157 (6th Cir. 2009) (same).  Rather, Agency policy directs the ALJ to base the RFC on "all of the relevant evidence in the case record" (including the claimant's medical history, objective medical evidence, effects of treatment, reports of daily activities, recorded observations, and opinion evidence), SSR 96-8, 1996 WL 374183, at *5

14

(July 2, 1996) – which, according to the Commissioner, is precisely what the ALJ did here. Notwithstanding the absence of a supporting medical opinion, the Commissioner also asserts that plaintiff fails to establish that the record warrants a finding of greater limitations than the ALJ found in the RFC – as it is her burden to show. *See* 20 C.F.R. §§ 404.1512(c), 416.912(c); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999).

The Commissioner also argues that the ALJ properly rejected Dr. Sharon's opinion because (1) Dr. Sharon had only seen plaintiff twice when she completed the opinion, (2) her treatment records reflect that plaintiff reported stable moods with her current medication regime, (3) Dr. Sharon prescribed plaintiff only five extra Xanax pills to account for her alleged panic attacks, and (4) to the extent Dr. Sharon assessed physical limitations, she did not treat plaintiff for lower back pain. (Dkt. 13-2, Pg ID 78). The Commissioner maintains that this explanation satisfies the requirement that the ALJ give "good reasons" before rejecting a treating source's opinion. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (treating physician's opinion due controlling weight only if it is supported by and not inconsistent with other substantial evidence in the record, and may be rejected if the ALJ provides good reasons for doing so). In both September and November 2013, Dr. Sharon noted that plaintiff had no anxiety, emotional lability, depression, sleep disturbance, or anhedonia, and that, while irritable, she was a

good historian, with logical and goal-oriented thoughts, fair to good eye contact, normal grooming, and no pressured speech.  (Dkt. 13-7, Pg ID 547-550).  The ALJ reasonably found that this evidence detracted from the extreme limitations Dr. Sharon identified.  Finally, the ALJ reasonably found the opinion inadequately supported.  Not only did Dr. Sharon not treat plaintiff for her physical impairments, but she admitted that she "filled out the physical capacity form for disability application based on [Plaintiff's] report of symptoms as objective findings were not present."  (Dkt. 13-7, Pg ID 549).  An ALJ may reject a medical opinion that is based largely on a claimant's subjective reports rather than objective evidence.  *Poe*, 342 Fed. Appx. at 156; *see also Mitchell v. Comm'r of Soc. Sec.*, 330 Fed. Appx. 563, 569 (6th Cir. 2009) ("A doctor's report that merely repeats the patient's assertions is not credible, objective medical evidence. . . .").

Plaintiff also faults the ALJ for relying on her moderate GAF scores and reports from treating sources that her symptoms improved with treatment.  (Pl. Br. 16-17; Dkt. 13-2, Pg ID 76-77, 79).  But the Commissioner says the ALJ appropriately considered this evidence; and moreover, plaintiff fails to identify any evidence arguably suggesting greater mental functional limitations – apart from her own allegations of anxiety, which the ALJ supportably found not entirely credible.  Having failed to demonstrate that the record compels a finding of a more restrictive mental RFC, plaintiff is not entitled to remand on this basis.

The Commissioner next maintains that the ALJ properly based his physical RFC assessment largely on the opinions of state agency physician Dr. Tariq Mahmood (which the ALJ gave significant weight), and consultative examiner Dr. Tanvir Qureshi (which the ALJ gave some weight). (Dkt. 13-2, Pg ID 78). Specifically, the ALJ's finding that plaintiff could perform light work with occasional postural activities is based directly on Dr. Mahmood's September 2012 assessment. (Dkt. 13-2, Pg ID 73; Dkt. 13-3, Pg ID 135-136). Plaintiff argues that such reliance was inappropriate because (1) Dr. Mahmood was a pediatrician; (2) only one exhibit (from the Advanced Pain & Spine Institute) was available at the time of his 2012 review; and (3) he did not consider her pulmonary records. (Pl. Br. 20-21; *see* Dkt. 13-3, Pg ID 133-134, 136). While a physician's specialty and the extent to which he reviewed the relevant record evidence are both factors for the ALJ to consider when weighing a medical opinion, the Commissioner asserts that plaintiff has not shown that these factors trump the ALJ's finding of consistency here. (Dkt. 13-2, Pg ID 78). In particular, the ALJ specified that he found Dr. Mahmood's opinion consistent with the record only "pertaining to [Plaintiff's] back pain," and acknowledged that plaintiff had subsequently developed pulmonary problems that warranted additional limitations. (Dkt. 13-2, Pg ID 78). According to the Commissioner, reliance on a state agency medical opinion that is based on a review of limited evidence remains appropriate where,

as here, the ALJ considers the subsequently-added evidence and accounts for it in the RFC assessment. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 513 (6th Cir. 2010); *McGrew v. Comm'r of Soc. Sec.*, 343 Fed. Appx. 26, 32 (6th Cir. 2009). In particular, the ALJ considered that there was little subsequent evidence relating to plaintiff's back impairment, and that the primary evidence (Dr. Qureshi's November 2013 examination report) reflected full range of motion in the lumbar spine, normal gait, full strength, and no evidence of muscle atrophy. (Dkt. 13-2, Pg ID 76-77; see Dkt. 13-7, Pg ID 343, 345-348). The ALJ gave Dr. Qureshi's opinion that plaintiff could perform medium work some weight, but further limited her to light work based on Dr. Mahmood's opinion and her own testimony. (Dkt. 13-2, Pg ID 78). The ALJ also adopted other limitations recommended by Dr. Qureshi, by limiting plaintiff to frequent manipulative limitations, frequent use of foot controls with both feet, and occasional postural activities – but further limited her to no climbing ladders, ropes, or scaffolds. (Dkt. 13-2, Pg ID 73; see Dkt. 13-7, Pg ID 352-353). And while plaintiff correctly notes that Dr. Qureshi did not specifically consider her pulmonary impairments, his examination post-dated her pulmonary diagnoses (Dkt. 13-7, Pg ID 358, 517-518, 527), yet he did not observe any chest or respiratory abnormalities (Dkt. 13-7, Pg ID 342-343). Nevertheless, he assessed a number of environmental limitations, permitting only occasional exposure to hazards and various environmental conditions. (Dkt. 13-7, Pg ID

18

354).  The ALJ adopted all these limitations, but further determined that plaintiff's pulmonary problems "warrant[ed] adding an option to perform work while either seated or standing to allow for shortness of breath and fatigue" (provided that she was not off-task for more than 8% of the workday).  (Dkt. 13-2, Pg ID 73, 77-78).  Plaintiff takes issue with this restriction, asserting that it is not adequately explained and "seems purely motivated by the [vocational expert's testimony that] anything in excess of 8% would preclude work."  (Pl. Br. 21; Dkt. 13-2, Pg ID 111-112).  The Commissioner points out again that it is plaintiff's burden to establish her RFC and thus to establish that the record compels a finding of greater limitations.  According to the Commissioner, she fails to meet this burden.  The only contrary evidence she cites is the opinions from Dr. Jain and Dr. Sharon that she would be off-task for 25% or more of the workday.  But, the Commissioner maintains that the ALJ properly rejected Dr. Sharon's opinion.  The ALJ also justifiably rejected Dr. Jain's opinion (which also included extreme sitting, standing, walking, and lifting limitations, and the requirement of a 30-minute break every hour).  (Dkt. 13-2, Pg ID 77-78; see Dkt. 13-7, Pg ID 536-539).  The ALJ reasoned that: (1) Dr. Jain's opinion was not supported by the objective evidence of record, (2) plaintiff continued to smoke despite Dr. Jain's advice to quit, and (3) plaintiff did not require any further emergency room visits or hospitalizations following her April 2013 hospitalization for acute respiratory

19

distress and pneumonia.  (Dkt. 13-2, Pg ID 77-78).

The ALJ acknowledged that plaintiff continued to have respiratory problems after April 2013 (including CT scans showing worsening lung disease), but correctly observed that these problems did not require hospitalization or other intensive treatment.  (Dkt. 13-2, Pg ID 75, 77-78; see Dkt. 13-7, Pg ID 517-518). As the ALJ also noted, plaintiff reported doing better after April 2013, and both Dr. Jain's and primary-care physician Dr. Arun Gupta's notes reflect generally mild findings (e.g., some coughing and shortness of breath with exertion, but fair air entry and no chest pain, wheezing, rhonchi, rales, or other sounds).  (Dkt. 13-7, Pg ID 461-462, 506-507, 510-511, 514-515, 520, 523-524, 563-564).  And, the ALJ also properly considered plaintiff's continued smoking despite repeated counseling about smoking cessation.  According to the Commissioner, the ALJ did not suggest, and was not required to suggest, that quitting would fully restore her ability to work. (Pl. Br. 20 (citing SSR 82-59, 1982 WL 31384, at *2)).  Rather, the ALJ merely found that her continued smoking despite the severity of her pulmonary impairments was one factor undermining Dr. Jain's assessment of the extent of her limitations.  *See Beck v. Comm'r of Soc. Sec.*, 2012 WL 7827842, at *16 (E.D. Mich. Dec. 26, 2012) (rejecting similar argument regarding SSR 82-59), adopted by 2013 WL 1317013 (Mar. 29, 2013).  Thus, according to the Commissioner, Dr. Jain's opinion does not compel a finding that plaintiff had

greater physical limitations, or would be off-task for a greater portion of the
workday.

As to credibility, the Commissioner first notes that plaintiff challenges only
three of the reasons cited by the ALJ for finding plaintiff not fully credible.  First,
she argues that the ALJ improperly considered her application for unemployment
benefits.  While conceding that the ALJ is entitled to consider such applications,
she asserts that the ALJ should still "consider[] plaintiff's situation in its entirety
before concluding that an[] unemployment application renders [her] incredible."
(Pl. Br. 22).  According to the Commissioner, plaintiff does not, however, identify
any relevant circumstances that the ALJ failed to consider.  Moreover, the Sixth
Circuit has endorsed the ALJ's reliance on unemployment applications in other
cases.  *See Justice v. Comm'r, Soc. Sec. Admin.*, 515 Fed. Appx. 583, 587 (6th Cir.
2013); *Workman v. Comm'r of Soc. Sec.*, 105 Fed. Appx. 794, 801 (6th Cir. 2004).

Second, plaintiff faults the ALJ for considering her school attendance when
there was no testimony about the same, and scant evidence in the record on the
subject. However the Commissioner argues that there are multiple references in
Dr. Gupta's treatment notes to plaintiff being "in school" between May 2012 and
October 2013:  "Son on Vyvanse doing better, she is in school too, thinks Vyvanse
will help her too."  (Dkt. 13-7, Pg ID 450, 453, 458, 461, 464, 467, 473, 476, 479).
The record does not, however, reflect that Dr. Gupta ever prescribed Vyvanse.

21

(Dkt. 13-7, Pg ID 450-451, 453-454, 458-459, 461-462, 464-465, 467-468, 473-474, 476-477, 479-480).  Given this record, the ALJ was entitled to consider plaintiff's extended school attendance, among other factors.

Third, plaintiff faults the ALJ for relying on her continued smoking, and in particular, for allegedly dismissing it as a mere "lifestyle choice." (Pl. Br. 23; Dkt. 13-2, Pg ID 77).  According to Plaintiff, the ALJ thereby ignored "the highly addictive nature of the product which likely impacts her ability to cease smoking." (Pl. Br. 23). The Commissioner points out, however, that failure to follow medical advice is a relevant credibility consideration, *see* SSR 96-7p, 1996 WL 374186, at *7, and contrary to plaintiff's assertion, the ALJ did point to several "recommendation[s] that [she] did not heed about failing to quit smoking." (Pl. Br. 20; Dkt. 13-2, Pg ID 75-77; see Dkt. 13-7, Pg ID 511, 515, 521, 552, 564).  Thus, the Commissioner maintains that the ALJ reasonably drew a negative inference from plaintiff's continued smoking despite these recommendations.  *See Norris v. Comm'r of Soc. Sec.*, 461 Fed. Appx. 433, 438 (6th Cir. 2012) (upholding credibility finding based in part on claimant's continuing to smoke despite related health problems); *Steiner v. Sec'y of Health & Human Servs*., 859 F.2d 1228, 1231 (6th Cir. 1987) (same).  Regardless of whether plaintiff's proposed inference (addiction) is also reasonable, the Commissioner says that it is not this Court's role to second-guess the ALJ's reasonable inferences where, as here, they are

supported by the record. *See Foster*, 279 F.3d at 353. As a result, the

Commissioner maintains that plaintiff has failed to demonstrate error in any of the

credibility findings she challenges.

## III.   DISCUSSION

### A.   Standard of Review

This Court has original jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this

statute is limited in that the court "must affirm the Commissioner's conclusions

absent a determination that the Commissioner has failed to apply the correct legal

standard or has made findings of fact unsupported by substantial evidence in the

record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005);

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding

whether substantial evidence supports the ALJ's decision, "we do not try the case

de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v.

McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383,

387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to

evaluate the credibility of witnesses, including that of the claimant." *Rogers v.

Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). "However, the ALJ is not

free to make credibility determinations based solely upon an 'intangible or

intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247,

23

quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing *Mullen*, 800 F.2d at 545.

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

24

>Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
>Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
>Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

B.  <u>Analysis</u>

1.  Treating physician

An opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination (a "non-examining source"), and an opinion from a medical source who regularly treats the claimant (a "treating source") is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship (a "non-treating source"). *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013) (internal citations omitted). An ALJ is required to evaluate every medical opinion of record, and set forth a valid basis for rejecting any. 20 C.F.R. § 404.1527; *see Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir.

26

1987).  Moreover, "in weighing medical evidence, 'ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.'" *Allen v. Comm'r of Soc. Sec.*, No. 12-15097, 2013 WL 5676254, at *15 (E.D. Mich. Sept. 13, 2013) (citing *Simpson v. Comm'r of Soc. Sec.*, 344 Fed. Appx. 181, 194 (6th Cir. 2009)).  An ALJ may not substitute his [or her] own medical judgment for that of a treating or examining doctor where the opinion of that doctor is supported by the medical evidence.  *See Simpson*, 344 Fed. Appx. at 194; *see also Bledsoe v. Comm'r of Social Sec.*, 2011 WL 549861, at *7 (S.D. Ohio 2011) ("An ALJ is not permitted to substitute her own medical judgment for that of a treating physician and may not make her own independent medical findings."); *Mason v. Comm'r of Soc. Sec.*, 2008 WL 1733181, at * 13 (S.D. Ohio 2008) ("[t]he ALJ must not substitute his own judgment for a doctor's conclusion without relying on other medical evidence or authority in the record.").  In other words, "[w]hile an ALJ is free to resolve issues of credibility as to lay testimony, or to choose between properly submitted medical opinions, the ALJ cannot substitute his [or her] own lay 'medical' opinion for that of a treating or examining doctor." *Beck v. Comm'r of Soc. Sec.*, 2011 WL 3584468, at *14 (S.D. Ohio 2011).  This is so even though the final responsibility for the RFC determination is an issue reserved to the Commissioner.  *Allen*, 2013 WL 5676254, at *15.

Plaintiff's primary argument is that the ALJ unreasonably discounted her

27

treating physician's opinion in favor of the review physician opinion.  With

respect to Dr. Jain's opinion regarding plaintiff's limitations, the ALJ concluded:

> As for the opinion evidence, Dr. Navin Jain, M.D., a
> pulmonologist at Monroe Pulmonary, opined on
> November 21 , 2013, that the claimant has pulmonary
> fibrosis limiting her to sitting up to two hours in a day
> and standing up to five minutes. He indicated that the
> claimant could walk less than one city block. He
> indicated that the claimant could not lift any weight and
> would need an unscheduled break of 30 minutes every
> hour. He also stated she would likely miss more than
> four days a month (Ex. 8F). The opinion of Dr. Jain is
> given little weight. While the medical evidence of record
> does support some respiratory problems since the
> claimant's bout of pneumonia in April 2013, these
> limitations are far in excess of what is supported by the
> evidence of record. The claimant admitted to Dr. Jain
> that she continued to smoke at an appointment on
> February 18, 2014. She has not required any additional
> emergency room visits or hospitalizations for respiratory
> problems since her release from the hospital in April
> 2013. Allowing the option to sit or stand while
> performing work and environmental limitations to avoid
> concentrated exposure to respiratory irritants such as
> fumes, odors, dust, and gases, extreme cold, extreme
> heat, humidity, and wetness should account for the
> claimant's lingering pulmonary problems despite her
> continuing to smoke.

(Dkt. 13-2, Pg ID 77-78).

The undersigned concludes that the ALJ failed to give the requisite "good

reasons" when he discounted the RFC assessment of plaintiff's treating physician,

Dr. Jain.  As the Sixth Circuit stated: "This requirement [to always give good

reasons] is not simply a formality; it is to safeguard the claimant's procedural rights.  It is intended to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that [ ] he is not."  *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (citation omitted).  Moreover, if the ALJ determined that plaintiff's treating physician's opinion should not be given controlling weight despite the medical evidence in support, "the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley v. Comm'r of Soc. Sec.*, 582 F.3d 399, 406 (6th Cir. 2009).  As explained in SSR 96-2p, adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to controlling weight, not that the opinion should be rejected.  Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927.  In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be

adopted, even if it does not meet the test for controlling weight.

Although the ALJ made an effort to review Dr. Jain's treatment records, the undersigned concludes that the ALJ did not offer the necessary illumination as to why he discounted his opinion. Here, the Commissioner spends a great deal of effort searching the record for support of the ALJ's treatment of Dr. Jain's opinions, but much of the argument is a *post-hoc* attempt to justify the failure to follow the correct treating source analysis, which the Court may not consider. *Berryhill v. Shalala*, 4 F.3d 993, 1993 WL 361792, at *6 (6th Cir. 1993) (The court "may not accept appellate counsel's post hoc rationalizations for agency action. It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself.") (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50, 103 (1983)); *Hyatt Corp. v. N.L.R.B.*, 939 F.2d 361, 367 (6th Cir. 1991) ("Courts are not at liberty to speculate on the basis of an administrative agency's order.... The court is not free to accept 'appellate counsel's post hoc rationalization for agency action in lieu of reasons and findings enunciated by the Board.'"). The ALJ's stated reasons for giving Dr. Jain's opinions little weight are as follows: (1) Dr. Jain's opinion was not supported by the objective evidence of record, (2) plaintiff continued to smoke despite Dr. Jain's advice to quit, and (3) plaintiff did not require any further emergency room visits or hospitalizations following her April 2013 hospitalization

30

for acute respiratory distress and pneumonia.  The ALJ does not create a logical

bridge between the evidence and these conclusions.  While the ALJ discusses Dr.

Jain's treatment records, he does not explain how his opinions are unsupported by

the record.  Moreover, the undersigned does not understand how plaintiff's failure

to quit smoking undermines Dr. Jain's opinions.  While this might certainly be a

factor to be considered in the assessment of plaintiff's credibility, neither the ALJ

nor the Commissioner explain how this fact suggests that Dr. Jain's opinions are

not supported.  Finally, while plaintiff did not require any further emergency

treatment, again, it is not apparent why this fact undermines Dr. Jain's opinions.

Even if Dr. Jain's opinion was not entitled to controlling weight, it was entitled to

deference in view of the longitudinal medical record.  Accordingly, proper

evaluation of Dr. Jain's opinion necessitates remand.

Dr. Jessica Sharon opined on November 6, 2013, that plaintiff has bipolar

disorder, panic disorder, post-traumatic stress disorder, and chronic low back pain

that limits her to being off task 25% or more of the workday and incapable of even

"low stress" jobs.  She limited plaintiff to sitting no more than 30 minutes at a

time, standing no more than 10-15 minutes at a time and walking less than a city

block.  Dr. Sharon indicated that plaintiff could sit up to six hours in a workday

and stand/walk less than two hours.  She also indicated that plaintiff would likely

need unscheduled breaks of 5-10 minutes once an hour.  She opined that plaintiff

could lift up to 10 pounds occasionally and rarely up to 20 pounds.  Dr. Sharon

opined that plaintiff could never twist, stoop, squat, or climb ladders, and could

rarely climb stairs.  She also indicated that plaintiff would likely miss four or more

days per month.

The ALJ gave Dr. Sharon's opinion little weight for the following reasons:

> [Dr. Sharon] admits in the completed form that she has
> only treated the claimant on two occasions. Treatment
> notes reflect that the claimant first treated with Dr.
> Sharon on September 11, 2013. At that time, she
> reported stable moods with her current medication
> regimen. She requested Xanax to help with sleep and
> panic attacks. Dr. Sharon prescribed the claimant Xanax
> as requested, adding only five extra pills to account for
> the panic attacks she was reportedly having a few times a
> month. Dr. Sharon did not treat the claimant for her low
> back pain and instead noted that she was in treatment
> with pain management.

(Dkt. 13-2, Pg ID 78).  The ALJ does not provide sufficiently good reasons for

giving Dr. Sharon's opinion little weight.  Notably, plaintiff was seen in Dr.

Sharon's office on more than two occasions before her opinion was issued.  She

also received treatment by a nurse practitioner in Dr. Sharon's office, Kristi

Ramirez, on April 11, 2013, February 21, 2013, and January 24, 2013.  (Dkt. 13-7,

Pg ID 550-555).[1]  The conclusion that plaintiff had "stable moods" with her

---

[1] Nurse practitioners are not acceptable medical sources and thus their "opinions" are not entitled to controlling weight. SSR 06-03p. Opinions from "other sources" may be considered in determining the severity of a plaintiff's impairment and how it affects his or ability to work, but they are not entitled to the deference afforded to treating source opinions.   20 C.F.R.

current medication regimen does little to illuminate the bases for the ALJ's

decision to give this opinion little weight.  The addition of more Xanax for panic

attacks suggests a worsening of symptoms, but the ALJ seems to suggest that

plaintiff's symptoms had not sufficiently worsened.  It is not clear how or why this

undermines Dr. Sharon's opinion.  Again, as with Dr. Jain, even if Dr. Sharon's

opinion was not entitled to controlling weight, it was entitled to deference in view

of the longitudinal medical record.  Accordingly, proper evaluation of Dr.

Sharon's opinion necessitates remand.

> 2.    Step 3

In the view of the undersigned, and in the circumstances of this case, the

lack of any medical opinion on the issue of equivalence is an error requiring

remand.  As set forth in *Stratton v. Astrue*, 987 F.Supp.2d 135, 147 (D. N.H.

2012), SSR 96-6p describes the process by which ALJs are to make step-three

determinations:

> The administrative law judge ... is responsible for
> deciding the ultimate legal question whether a listing is
> met or equaled. As trier of the facts, an administrative
> law judge ... is not bound by a finding by a State agency
> medical or psychological consultant or other program
> physician or psychologist as to whether an individual's

---

§ 404.1513(d); *see Smith-Johnson v. Comm'r of Soc. Sec.*, 579 Fed.Appx. 426, 435 (6th Cir.
2014).  The undersigned fails to see how this limitation on the "opinions" of a nurse practitioner
affect the longitude of treatment by a treating physician such as Dr. Sharon.

> impairment(s) is equivalent in severity to any impairment
> in the Listing of Impairments. However, *longstanding
> policy requires that the judgment of a physician* (or
> psychologist) designated by the Commissioner *on the
> issue of equivalence on the evidence* before the
> administrative law judge ... *must be received into the
> record as expert opinion evidence and given appropriate
> weight.*

1996 WL 374180, at *3 (emphasis added); *Barnett v. Barnhart*, 381 F.3d 664, 670

(7th Cir. 2004) ("Whether a claimant's impairment equals a listing is a medical

judgment, and an ALJ must consider an expert's opinion on the issue.") (citing 20

C.F.R. § 1526(b)); *Retka v. Comm'r of Soc. Sec.*, 1995 WL 697215, at *2 (6th Cir.

Nov. 22, 1995) ("Generally, the opinion of a medical expert is required before a

determination of medical equivalence is made.") (citing 20 C.F.R. § 416.926(b));

*Modjewski v. Astrue*, 2011 WL 4841091, at *1 (E.D. Wis. Oct. 21, 2011) (warning

that an ALJ who makes a step-three equivalence determination without expert

opinion evidence runs the risk of impermissibly playing doctor).

The *Stratton* court further explains that SSR 96-6p treats equivalence

determinations differently from determinations as to whether an impairment meets

a listing, requiring expert evidence for the former, but not the latter. *Stratton*, 987

F.Supp.2d at 148 (citing *Galloway v. Astrue*, 2008 WL 8053508, at *5 (S.D. Tex.

2008) ("The basic principle behind SSR 96-6p is that while an ALJ is capable of

reviewing records to determine whether a claimant's ailments meet the Listings,

expert assistance is crucial to an ALJ's determination of whether a claimant's

ailments are equivalent to the Listings.") (citation and quotation marks omitted)).

This expert opinion requirement can be satisfied by a signature on the Disability

Determination Transmittal Form. *Stratton*, 987 F.Supp.2d at 148 (citing SSR 96-

6p, 1996 WL 374180, at *3 (The expert-opinion evidence required by SSR 96-6p

can take many forms, including "[t]he signature of a State agency medical ...

consultant on an SSA-831-U5 (Disability Determination and Transmittal

Form).")); *Field v. Barnhart*, 2006 WL 549305, at *3 (D. Me. Mar. 6, 2006) ("The

Record contains a Disability Determination and Transmittal Form signed by Iver

C. Nielson, M.D .... discharging the commissioner's basic duty to obtain

medical-expert advice concerning the Listings question."), *adopted by* 2006 WL

839494 (D. Me. Mar. 30, 2006).  In the instant record, there is no Disability

Determination and Transmittal Form signed by a medical advisor as to plaintiff's

mental impairments.

The great weight of authority holds that a record lacking any medical

advisor opinion on equivalency requires a remand.  *Stratton*, 987 F.Supp.2d at

149-150 (collecting cases); *see e.g. Caine v. Astrue*, 2010 WL 2102826, at *8

(W.D. Wash. Apr. 14, 2010) (directing ALJ to obtain expert-opinion evidence on

equivalence where none was in the record), *adopted by* 2010 WL 2103637 (W.D.

Wash. 2010); *Wadsworth v. Astrue*, 2008 WL 2857326, at *7 (S.D. Ind. 2008)

35

(holding that where record included no expert-opinion evidence on equivalence, "[t]he ALJ erred in not seeking the opinion of a medical advisor as to whether Mr. Wadsworth's impairments equaled a listing"); *see also*, *Maynard v. Comm'r*, 2012 WL 5471150 (E.D. Mich. 2012) ("[O]nce a hearing is requested, SSR 96-6p is applicable, and requires a medical opinion on the issue of equivalence."); *Harris v. Comm'r*, 2013 WL 1192301, *8 (E.D. Mich. 2013) (a medical opinion on the issue of equivalence is required, regardless of whether the SDM model is implicated). Significantly, "[n]either the ALJ nor this court possesses the requisite medical expertise to determine if [plaintiff]'s impairments ... in combination equal one of the Commissioner's listings." *Freeman v. Astrue*, 2012 WL 384838, at *4 (E.D. Wash. 2012).

The Commissioner contends that the step three error in this case, which she acknowledges, requires no remand because (1) plaintiff did not meet her burden of establishing equivalency with medical evidence; and (2) in light of the ALJ's analysis of all the record evidence, this is mere harmless error that does not require remand. As to the first proposition, the cases on which the Commissioner relies are distinguishable. It is axiomatic that the plaintiff bears the burden of proving equivalency, as set forth in *Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001), and *Lusk v. Comm'r of Soc. Sec.*, 106 Fed. Appx. 405, 411 (6th Cir. 2004) (plaintiff must "present medical

evidence that describes how his impairment is equivalent to a listed impairment"). None of those cases, however, feature an instance where the ALJ failed to obtain a medical opinion on the issue of equivalency or where this was raised as an issue on appeal. Of course, plaintiff bears the burden of proof at step three, but the Commissioner fails to explain how this burden erases the ALJ's obligation under the Commissioner's own binding guidance to obtain a medical opinion on equivalency.

According to the Commissioner, the failure to obtain a medical opinion concerning equivalence can be harmless error in some circumstances. *Bukowski v. Comm'r of Soc. Sec.*, 2014 WL 4823861, at *6 (E.D. Mich. Sept. 26, 2014); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 655-58 (6th Cir. 2009) (applying harmless-error analysis in context of ALJ's step-three findings). For example, the error may be harmless where "the evidence does not demonstrate the possibility that [the plaintiff] could meet the criteria of a listed impairment." *Leveque v. Colvin*, 2015 WL 4601156, at *6 (E.D. Mich. July 31, 2015), adopted by 2015 WL 5612016 (Sept. 23, 2015). As explained in *Bukowski*, "'the harmless error inquiry turns on whether the ALJ would have reached the same conclusions,' at Step Three had there been a medical opinion on the combination of Bukowski's psychiatric and physical impairments." *Bukowski*, 2014 WL 4823861, at *5. In *Bukowski*, the failure to obtain an opinion on equivalence was deemed harmless

37

"given Plaintiff's failure to adduce evidence that the physical impairments had any effect on her psychiatric impairments and her admission that her psychiatric impairments were the basis for her disability." *Id.* at *6. Here, plaintiff has made no such admissions, thus rendering *Bukowski* inapposite.

Similarly, in *Rabbers*, the Sixth Circuit concluded that the ALJ's failure to rate the "B" criteria at step three was harmless; but again, there was no issue of any failure to obtain a medical opinion on equivalency there. Indeed, there appears to have been a consulting examination by one expert and another who completed a Psychiatric Review Technique Form, which, of course, includes an analysis of equivalence. *See* 582 F.3d at 650.

In *Leveque*, the step three error was found harmless because plaintiff failed to provide medical evidence showing that she met the criteria in the listings for her physical impairments. However, as explained in *Stratton*, a medical opinion is not required for an ALJ to determine if a claimant satisfied a Listing. It is only necessary for equivalence, which is necessarily a medical determination. Thus, *Leveque* does not seem to reach the precise issue presently before the Court. Notably, *Leveque* and *Bukowski* are based on *Rabbers*, which concluded the special technique did not confer an "important procedural safeguard" on claimants such that an ALJ's failure to rate the B criteria would rarely be harmless. *Id*. at 657. This was so because faced with an ALJ's failure to address the B criteria, a

38

reviewing court need only ask if the claimant's mental impairment would have ultimately satisfied that criteria.  The kind of evidence considered under the B criteria is "objective, concrete factual and medical evidence that will be apparent in the record ... ."  *Id*.  In the view of the undersigned, a medical opinion on the issue of equivalence does not lend itself to this kind of analysis because formulating such a medical opinion falls squarely outside the expertise of either an ALJ or the Court.  *See e.g.*, *Freeman*, *supra*.

For these reasons, the undersigned concludes that this matter must be remanded so that the ALJ can obtain the opinion of a qualified medical advisor on the issue of equivalence as to plaintiff's mental impairments.  Given that the opinions of a medical advisor must be obtained, plaintiff's credibility will necessarily have to be re-assessed in full after such an opinion is obtained.

## IV.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion for summary judgment be **DENIED**, that findings of the Commissioner be **REVERSED**, and that this matter be **REMANDED** for further proceedings pursuant to Sentence Four.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: February 22, 2017        <u>s/Stephanie Dawkins Davis</u>
                                    Stephanie Dawkins Davis
                                    United States Magistrate Judge

## **CERTIFICATE OF SERVICE**

I certify that on <u>February 22, 2017</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

<div style="margin-left: 40%">

<u>s/Tammy Hallwood</u>
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov

</div>